# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY LEE GRAY,<br><br>                                    Plaintiff,<br>       v.<br><br>ROBERT HERNANDEZ et al.,<br><br>                                    Defendants. | CASE NO. 08 CV 1147 JM (WVG)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATIONS**<br><br>**Doc. Nos. 81 and 101** |

Plaintiff Gregory Lee Gray ("Plaintiff"), a state prisoner appearing *pro se* and *in forma pauperis*, initiated this action under 42 U.S.C. § 1983 on June 26, 2008, claiming his civil rights were violated in June 2007 when he was housed at R.J. Donovan State Prison. (Doc. No. 1, "Compl.") This court granted in part and denied in part the motion to dismiss filed by defendants Hernandez, Marrero, Sterling, and Peterson. (Doc. No. 38, "Order.") On April 14, 2010, Plaintiff filed a First Amended Complaint based on the alleged civil rights violations at R.J. Donovan State Prison in June 2007. (Doc. No. 80, "FAC.") Defendants move to dismiss Plaintiff's claims in his FAC pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Doc. No. 81, "Motion.")

On November 30, 2010, Judge Gallo issued a Report and Recommendation (Doc. No. 101, "R&R.") recommending that this court grant the Motion with regard to Plaintiff's Eighth and Fourteenth Amendment claims.[1] Plaintiff filed objections to the R&R. (Doc. No. 104, "Obj.")

---

[1] The Order following Plaintiff's Complaint dismissed his Eighth and Fourteenth Amendment claims. Because this court denied Defendants' motion to dismiss Plaintiff's First Amendment claim in that order, the R&R does not address Plaintiff's First Amendment claims.

Having carefully considered the thorough and thoughtful R&R, incorporated herein, the record before the court, Plaintiff's objections, and the applicable authorities, the court wholly **ADOPTS THE R&R**, except that the court dismisses all claims against Defendant Hernandez with prejudice.

//

**I. Background**

While housed at Donovan State Prison, Plaintiff filed a grievance against defendants Marrero, Sterling, and Peterson, prison employees, claiming they denied him access to the law library and the courts. (FAC at 2.) After exhausting his administrative grievance and subsequent appeals, Plaintiff informed defendants Sterling and Peterson that he intended to sue them for $1666.20 in Small Claims Court, but was willing to settle for $200. (Id.) Sterling and Peterson filed charges against Plaintiff for extortion in violation of California Code of Regulations ("CCR") § 3013. (Id.) On June 18, 2007, during the investigation and review of the incident, Plaintiff was placed in Administrative Segregation ("Ad Seg"). (FAC at 3.) Plaintiff claimed that, while in Ad Seg, he became sick from the food and the doctors refused to provide him medical care. (Compl. at 3.) After he was placed in Ad Seg, Plaintiff lost his job with PIA Industry Laundry. (FAC at 7.) While he was in Ad Seg, Plaintiff filed his Small Claims suit. (FAC at 3.)

Plaintiff was found not guilty of the extortion violation on July 29, 2007, and he was released from Ad Seg on August 22, 2007. (FAC at 2-3.) He was transferred out of Donovan on October 2, 2007, first to Mule Creek State Prison and then to High Desert State Prison. (FAC at 3.)

Based on these facts and his belief that Defendants placed Plaintiff in Ad Seg to prevent him from bringing a Small Claims suit, Plaintiff filed a complaint alleging First Amendment retaliation, Eighth Amendment cruel and unusual punishment, and Fourteenth Amendment violation of due process. (Compl. at 3.) Plaintiff's complaint included claims against Hernandez, warden of Donovan State Prison; Marrero, Captain of Facility 3 Yard; Sterling, Library Technical Assistant; and Peterson, Senior Law Librarian, in both their individual and official capacities. (Compl. at 2.) Plaintiff sought injunctive relief and actual and punitive damages. (Compl. at 7.)

Defendants filed a motion to dismiss the Complaint. (Doc. No. 14.) On August 27, 2009, the court issued an order adopting the R&R, granting in part and denying in part the motion to dismiss.

1  (Order at 11.)  The order denied the Defendants' motion to dismiss with regard to Plaintiff's First
2  Amendment claim, but granted the motion without prejudice with regard to Plaintiff's Eighth and
3  Fourteenth Amendment claims, his claims against Hernandez, and his claims for injunctive relief.
4  (Id.)   The court dismissed with prejudice Plaintiff's claims against all Defendants in their official
5  capacities.  (Id.)

6  On April 14, 2010, Plaintiff filed his FAC, claiming that Defendants violated his constitutional
7  rights under the First, Eighth, and Fourteenth Amendments.  (FAC at 7-16.)  He sues Defendants in
8  their individual and official capacities, and seeks injunctive relief and actual and punitive damages.
9  (FAC at 1.)

10  //

11  **II. Legal Standard**

12  The court reviews a magistrate judge's R&R according to the standards set forth in Fed. R. Civ.
13  P. 72(b) and 28 U.S.C. § 636(b)(1).  The court reviews *de novo* those portions of the report to which
14  a party objects.  Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1); United States v. Raddatz, 447 U.S.
15  667, 673-74 (1980).  "A judge of the court may accept, reject, or modify, in whole or in part, the
16  findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

17  Rule 12(b)(6) dismissal is proper only in "extraordinary" cases. United States v. Redwood
18  City, 640 F.2d 963, 966 (9th Cir. 1981).  In evaluating a 12(b)(6) motion, the court must accept the
19  complaint's allegations as true, and construe them in the light most favorable to the plaintiff.  Ashcroft
20  v. Iqbal, 129 S.Ct. 1937, 1949 (2009); see Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995).
21  The court may not dismiss the complaint if it "contain[s] sufficient factual matter, accepted as true,
22  to 'state a claim to relief that is plausible on its face.'"    Ashcroft, 129 S.Ct. at 1949 (citing Bell
23  Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the
24  plaintiff pleads factual content that allows the court to draw the reasonable inference that the
25  defendant is liable for the misconduct alleged."  Ashcroft, 129 S.Ct. at 1949.  The court should grant
26  12(b)(6) relief only where the complaint lacks either a "cognizable legal theory" or facts sufficient to
27  support a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.
28  1990).

1  //

2  **III. Discussion**

3  *A. Default Judgment*

4      Plaintiff moved for default judgment because Defendants failed to respond to the Complaint
5  within the 20 days allowed by Rule 12(a). As this court noted in its Order following the motion to
6  dismiss the Complaint, Defendants' response was timely filed because they had waived service of
7  process, resulting in a 60-day reply period under Rules 4(d)(3) and 12(a)(I)(A)(ii). (Order at 3.)

8  *B. First Amendment Retaliation Claim*

9      The R&R notes that Plaintiff included a First Amendment retaliation claim in his FAC. (R&R
10 at 4.) However, the R&R does not address this claim because of this court's order denying
11 Defendants' motion to dismiss the same First Amendment claim in Plaintiff's Complaint. (R&R at
12 5, n. 5.) Plaintiff's First Amendment claim remains viable.

13 *C. Eighth Amendment Claim for Cruel and Unusual Punishment*

14     Plaintiff contends that Defendants subjected him to cruel and unusual punishment in violation
15 of the Eighth Amendment by not sanitizing food serving tables, serving him poisonous food, and
16 failing to provide him with medical care. (FAC at 9.) The R&R recommends that this court grant
17 Defendants' motion to dismiss that claim because Plaintiff failed to allege: (1) any act or omission by
18 Defendants resulting in a deprivation of Plaintiff's basic needs that would constitute a violation of the
19 Eighth Amendment, (2) that Defendants knew of an excessive risk to Plaintiff's health or safety, or
20 (3) that Defendants were deliberately indifferent to his health and safety. (R&R at 13.) Plaintiff
21 objects to that finding, arguing he did properly assert an Eighth Amendment violation by claiming:
22 (1) Defendants failed to sterilize the food area, resulting in him eating "poisonous" food, (2) "the
23 doctors" failed to give him medical treatment, and (3) Defendants caused him to lose his job. (Obj.
24 at 5.)

25     To rise to the level of a constitutional violation under modern standards, conditions of
26 confinement must "involve the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452
27 U.S. 337, 347 (1981). A proper claim of an Eighth Amendment violation regarding conditions of
28 confinement, including food and medical care, has both a subjective component and an objective

1 component. Hudson v. McMillian, 503 U.S. 1, 8 (1992); Wilson v. Seiter, 501 U.S. 294, 303 (1991).

2 The subjective component requires the plaintiff to make a showing that the prison officials involved "act[ed] with a sufficiently culpable state of mind." Wilson, 501 U.S. at 298; Johnson v. Lewis, 217 F.3d 726, 731(9th Cir. 2000). Specifically, the prison official must act with "deliberate indifference," which occurs when the "official knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Wilson, 501 U.S. at 298. Prison guards act with deliberate indifference to a prisoner's medical needs when the prisoner has a serious illness or injury and the guards "intentionally den[y] or dela[y] access to medical care or intentionally interfer[e] with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104-105 (1976).

The objective component of an Eighth Amendment claim requires the plaintiff to make a showing that the "deprivation" was "sufficiently serious," such that he or she was deprived of "the minimal civilized measure of life's necessities." Wilson, 501 U.S. at 298 (citing Rhodes, 452 U.S. at 347). Those basic necessities include food, medical care, and sanitation. Rhodes, 52 U.S. at 347. In determining whether the deprivation of any of these necessities satisfies the objective component of the Eighth Amendment, the court must consider the "circumstances, nature, and duration of the deprivation." Johnson, 217 F.3d at 731. The less severe the deprivation, the longer the time necessary for the deprivation to satisfy the objective requirement. Id. at 731-732. For example, the "subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." Anderson v. County of Kern, 45 F.3d 1310, 1314 (9th Cir. 1995). To satisfy the objective component for an Eighth Amendment claim based on a deprivation of medical care, the plaintiff must allege a "serious medical need," such that the failure to treat the problem could result in "further significant injury." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing McGuckin v. Smith, 974 F.2d 1050 (9th Cir.1991)).

Plaintiff correctly asserts that prisons must provide inmates with adequate food, sanitation, and medical care. Plaintiff did claim that he was denied these basic necessities by alleging that "officers and doctors" failed to sterilize the food serving table, resulting in him eating "poisonous food," and ignored him when he sought medical attention. (FAC 9.) However, Plaintiff failed to state a claim to satisfy either the subjective or objective requirements for establishing an Eighth Amendment

1 | violation based on prison conditions.

2 | Although in his Objections Plaintiff states that the "Defendants and Officers of R.J. Donovan Ad Seg" acted deliberately indifferently in failing to sterilize the serving tables, he alleges no facts to show that the officers involved acted with deliberate indifference. He further states no facts that show the officers knew that the tables needed to be sterilized and that a failure to do so would result in an "excessive" risk to inmate health, nor that the officers disregarded that risk. He claims only that the failure to sanitize the tables resulted in an "immediate threat to the Plaintiff's health and well-being," not an excessive risk. Not only did Plaintiff fail to make these claims about the depriving officers, but Plaintiff also failed to allege that any of the named defendants were among the officers who brought about this deprivation. That Defendants were involved in the events leading up to Plaintiff's placement in Ad Seg does not mean they are liable for the actions of other officials in Ad Seg, even if those actions constituted an Eighth Amendment violation.

Similarly, Plaintiff has not alleged that Defendants knew of and disregarded Plaintiff's need of medical attention, nor that a disregard of his claimed medical problems were serious enough that a failure to treat them would pose an excessive risk to his health. Plaintiff's claim that the doctors ignored his request for assistance suggests the doctors (though not Defendants) knew of his illness. However, he presents no evidence to suggest that the doctors deliberately refused to treat him, rather than that the doctors did not believe that he needed treatment. As noted in the R&R, Plaintiff's medical problem seemed to resolve itself without treatment. More importantly, even if some prison employees acted with deliberate indifference, Plaintiff provides no evidence that those employees included Defendants. In fact, Plaintiff states that he knows the names of the doctors who violated the Eighth Amendment by failing to provide him medical treatment, suggesting that Defendants were not the officials who committed that violation.

Finally, Plaintiff has not alleged an objectively serious enough deprivation to be considered cruel and unusual punishment. Prison officials' failure to sanitize the serving tables to Plaintiff's expectations one time, or the resulting bad food, is not sufficiently serious enough to violate the inmate's constitutional rights. Plaintiff additionally does not allege any facts that show his stomach ache was sufficiently serious that a failure to treat him violated the Eighth Amendment. He does not

1  state that his illness continued for an extended period of time, or that the failure to treat it would result
2  in significant further harm.
3       The court adopts the findings and conclusions of the R&R that Plaintiff has not adequately pled
4  the objective or subjective components of his Eighth Amendment claim. Accordingly, Defendants'
5  motion to dismiss Plaintiff's Eighth Amendment claim for cruel and unusual punishment is
6  **GRANTED**, and Plaintiff's Eighth Amendment claim is dismissed without prejudice.
7  *D. Fourteenth Amendment Claim for Denial of Due Process*
8       Plaintiff contends that he was denied due process under the Fourteenth Amendment because:
9  (1) he lost his PIA Industry Laundry job without due process; (2) he was placed in Ad Seg without any
10 prior proceedings, and (3) he was transferred to another facility in order to stop his Small Claims suit.
11 (FAC at 12.)
12      "The requirements of procedural due process apply only to the deprivation of interests
13 encompassed by the Fourteenth Amendment's protection of liberty and property." Board of Regents
14 v. Roth, 408 U.S. 564, 569 (1972). Not all substantial deprivations that occur in prison, however,
15 trigger Fourteenth Amendment protections. Meachum v. Fano, 427 U.S. 215, 225 (1976).
16      In addition to the liberty interests derived directly from the Constitution, states may create
17 Fourteenth Amendment liberty interests in order to protect "freedom from restraint which... imposes
18 atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."
19 Sandin v. O'Connor, 515 U.S. 472, 483-84 (1995). The court should consider three factors in
20 determining whether conditions in administrative segregation are atypical and significant: "1) whether
21 the challenged condition 'mirrored those conditions imposed upon inmates in administrative
22 segregation and protective custody,' and thus comported with the prison's discretionary authority; 2)
23 the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will
24 invariably affect the duration of the prisoner's sentence." Ramirez v. Galaza, 334 F.3d 850, 860-61
25 (9th Cir. 2003) (citing Sandin, 515 U.S. at 486-87). If the court determines that the hardship is in fact
26 atypical and significant, "then the court must determine whether the procedures used to deprive that
27 liberty satisfied Due Process." Ramirez, 334 F.3d at 860-61.
28      1. Prison Employment

The Due Process clause does not create a liberty interest in prison employment. Walker v. Gomez, 370 F.3d 969, 973 (9th Cir. 2004) (citing Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir. 1986) (per curiam)); Vignolo v. Miller, 120 F.3d 1075, 1077-78 (9th Cir. 1997). The R&R finds that California law requires only a "reasonable opportunity" for prison employment, not an absolute right, and therefore that Plaintiff has no state-created liberty interest in prison employment. (R&R at 14-15) (citing Toussaint v. McCarthy, 801 F.2d 1080, 1095 (9th Cir. 1986) (abrogated on other grounds).

Plaintiff objects to the R&R's findings because (1) the Fourteenth Amendment creates a liberty interest in taking prison employment from an inmate for "unjust reasons," (2) CCR § 3040(a) requires prisoners to work, (3) the "reasonable opportunity" standard did not apply to him because he was already employed, and (4) his job was his livelihood, and losing his livelihood created a significant hardship. (Obj. at 8.)

No case has provided an exception to the rule that the Fourteenth Amendment does not create a liberty interest in prison employment. Application of the rule does not depend on the reason the inmate loses his job. Whether an inmate loses prison employment for an unjust reason or a just reason, there is no liberty interest in prison employment.

CCR § 3040(a) states, "Every able-bodied person committed to the custody of the Secretary of the Department of Corrections and Rehabilitation is obligated to work as assigned by department staff and by personnel of other agencies to whom the inmate's custody and supervision may be delegated." Plaintiff argues that this regulation, requiring California inmates to work, creates a liberty interest in a prisoner maintaining his prison employment. However, an obligation is not synonymous with a right. The State of California imposed the obligation on prisoners, and has discretion to remove inmates from prison employment. See § 3040(f) (providing procedures for the removal of an inmate from employment). Further, in holding that minimum wage laws do not apply to prisoners, the Ninth Circuit explained that inmate labor "is penological, not pecuniary," and that their labor "belongs to the institution." Hale v. State of Ariz., 993 F.2d 1387, 1395 (9th Cir. 1993) (citing Vanskike v. Peters 974 F.2d 806, 810 (7th Cir. 1992) ("Prisoners are essentially taken out of the national economy upon incarceration. When they are assigned work within the prison for purposes of training and rehabilitation, they have not contracted with the government to become its employees. Rather, they

1 are working as part of their sentences of incarceration.")). Because an inmate's employment
2 "belongs" to the prison sentence, the inmates do not have the right to work, but rather that the prison
3 has discretion to grant and discontinue an inmate's employment.

4       Plaintiff next argues that the "reasonable opportunity to participate" in prison employment
5 requirement stated by <u>Toussaint v. McCarthy</u> does not apply to Plaintiff because he was already
6 employed. Plaintiff misconstrues the R&R's purpose in citing the "reasonable opportunity" standard.
7 The R&R does not imply that Plaintiff did or did not have a reasonable opportunity to participate in
8 prison employment. Rather, the R&R states simply that the Ninth Circuit's requirement that inmates
9 have a reasonable opportunity to participate in prison employment demonstrates that inmates do not
10 have an absolute right to prison employment. Without a right to prison employment, Plaintiff cannot
11 have a liberty or property interest in retaining his employment. Thus, Plaintiff is not "beyond the
12 scope" of the "reasonable opportunity" standard.

13       Finally, Plaintiff contends that the loss of his employment constituted an atypical and
14 significant hardship because it was his only means of livelihood. However, he does not claim that the
15 loss of employment was atypical of other inmates in Ad Seg. He further does not allege any facts to
16 show that his loss of employment was a significant hardship to him. Even without prison employment,
17 inmates should receive life's basic necessities.[2]

18       2. Placement in Segregation

19       Prisoners ordinarily have no liberty interest in remaining in the general prison population, even
20 if the conditions there are more harsh. <u>Sandin</u>, 515 U.S. at 486; <u>see</u> <u>Hewitt v. Helms</u>, 459 U.S. 460,
21 468 (1983). As a result, to allege a due process violation for placement in segregation, a plaintiff must
22 assert facts related to his placement in Ad Seg that show "the type of atypical, significant deprivation
23 [for] which a State might conceivably create a liberty interest." <u>Sandin</u>, 515 U.S. at 486.[3] To show

---

[2] If they do not receive basic necessities, as Plaintiff alleges, that claim falls under the First Amendment retaliation and Eighth Amendment cruel and unusual punishment claims.

[3] Before <u>Sandin</u> changed the standard for determining whether there is a state-created liberty interest under the Fourteenth Amendment, the Ninth Circuit held that California law had created a liberty interest for prisoners in Administrative Segregation. <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1100 (9th Cir. 1995). However, that liberty interest extended only to limited procedural requirements: "Prison officials must hold an informal nonadversary hearing within a reasonable time after the

1  such an "atypical, significant deprivation" that violates the Fourteenth Amendment, the plaintiff must
2  allege that conditions in Ad Seg were a "dramatic departure" from ordinary prison conditions. <u>Id.</u> at
3  485.   Further, if the plaintiff's conditions in disciplinary segregation largely "mirrored those
4  conditions imposed upon inmates in administrative segregation," those conditions do not impose an
5  atypical, significant hardship on the plaintiff. <u>See</u> <u>id.</u> at 486.

6  Plaintiff asserts that he suffered significant hardship in Ad Seg because he (1) lost his regular
7  program in the general population, (2) was on 24-hour lock down in solitary confinement, (3) did not
8  receive medical treatment, (4) could only shower once every three days, (5) received unhealthy meals,
9  (6) had a "lack" of exercise, and (7) received yard once or twice a week. (Obj. at 9.) Plaintiff claims
10 that he had a liberty interest based on these facts because such "daily activities are necessary" and are
11 "the ordinary way of prison life." (Obj. at 9.)

12 Although Plaintiff alleged the above facts to show the restraint under which he was placed in
13 prison, he does not assert facts to show that these conditions were different from those of either the
14 general prison population or of other inmates in administrative segregation. He further did not claim
15 any facts that show a "dramatic" or "significant" difference in condition between his conditions and
16 that of other prisoners. Claiming that these activities were "necessary" does not suffice to show that
17 the deprivation rose to the level of significant hardship. Plaintiff thus has not alleged sufficient facts
18 to demonstrate the conditions in Ad Seg imposed a significant and atypical hardship on him, and
19 therefore has not stated a claim for a violation of due process based on his placement in Ad Seg.

20 <u>3. Transfer to Another Facility</u>

21 The Fourteenth Amendment does not "protect a duly convicted prisoner against transfer from
22 one institution to another within the state prison system." <u>Meachum</u>, 427 U.S. at 225. States have the
23 authority to confine their prisoners in any of their institutions, even if "life in one prison is much more
24 disagreeable than in another." <u>Id.</u> Prison officials may transfer prisoners for many reasons, not
25 limited to serious misconduct. <u>Id.</u> at 228. Because the Fourteenth Amendment creates no liberty

---

27 prisoner is segregated. The prison officials must inform the prisoner of the charges against the prisoner
   or their reasons for considering segregation. Prison officials must allow the prisoner to present his
28 views." <u>Id.</u> at 1100. Plaintiff here was informed of the reason he was placed in Ad Seg and was
   provided with an evidentiary hearing.

interest in preventing a transfer between prisons, on the basis of the Constitution itself, Plaintiff's due process rights were not violated with his transfer from Donovan.

Plaintiff further argues, without citing authority, that California law creates a liberty interest in non-consensual prison transfers. (Objections at 9). To the contrary, California law vests the management and control of state prisons and prisoners to the Department of Corrections and Rehabilitation. Cal. Penal Code § 5054 (2005). That control includes the authority to transfer prisoners from one state prison to another. Cal. Penal Code § 5080 (2000).

Plaintiff further does not allege facts to show that the transfer between prisons was a significant hardship to him such that a state might create a liberty interest, or even that the transfer in any way differed from prison life in Donovan.

Finally, Plaintiff argues that Defendant Marrero retaliated against Plaintiff by transferring him. (Objections at 10). As noted in the R&R, Plaintiff's retaliation claim falls within the First Amendment analysis. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

Because Plaintiff has no liberty or property interest, either direct or state created, in retaining prison employment, avoiding segregation, or remaining in the same facility, the court adopts the R&R's findings and **GRANTS** Defendants' motion to dismiss Plaintiff's Fourteenth Amendment claims. Plaintiff's Fourteenth Amendment claims are dismissed without prejudice.

*E. Eleventh Amendment Immunity*

Plaintiff sues Defendants in both their official and personal capacities.[4] State officials, however, have Eleventh Amendment immunity from suit in their official capacities. Will v. Michigan Dept. of State Police, 491 U.S. 58, 67, 71(1989) ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"; "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office... [N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). One relevant exception to this general principle is that Eleventh Amendment immunity "does not bar suits for prospective injunctive relief against individual state

---

[4] In its Order, the court dismissed with prejudice Plaintiff's claims against Defendants in their official capacities.

1 officials acting in their official capacity." Pittman v. Oregon Employment Dept., 509 F.3d 1065, 1071
2 (9th Cir. 2007); see also Will, 491 U.S. at 71, n. 10.

3 The R&R correctly finds that Plaintiff's request for injunctive relief does not allow his claim
4 for damages against Defendants in their official capacities to go forward. Plaintiff objects, arguing
5 that he should be allowed to sue Defendants in their official capacities because he can sue them in
6 their individual capacities. (Obj. at 10-11.) In addition, he argues Defendants do not have sovereign
7 immunity because they are state actors who committed wrongs at their workplace. (Id.)

8 Plaintiff's first argument defies precedent dictating law on sovereign immunity. The Supreme
9 Court explicitly held that states and state officials are immune from suit under § 1983. If Congress
10 disagrees with the Court's interpretation of the statute's use of the term "persons," Congress can
11 amend the statute to clarify the term's meaning. This court must apply the law as it stands today.

12 Plaintiff's second argument does not properly apply the law. Defendants have sovereign
13 immunity under the Eleventh Amendment specifically because they are state employees.

14 Clearly, Plaintiff's claims for damages against Defendants in their official capacities cannot
15 go forward. Plaintiff also seeks injunctive relief, an exception to sovereign immunity for state
16 employees in their official capacities. However, as discussed below, Plaintiff seeks injunctive relief
17 against nonparties to this lawsuit, not against Defendants. Therefore, Plaintiff has no valid claims
18 against Defendants in their official capacities, and the court thus **GRANTS** Defendants' motion to
19 dismiss all claims against Defendants in their official capacities without leave to amend.

20 *F. Qualified Immunity*

21 Defendants Sterling, Peterson, and Marrero move to dismiss Plaintiff's claims for damages
22 against them in their individual capacities based on qualified immunity. This court denied
23 Defendants' first motion to dismiss the claims in Plaintiff's Complaint on the grounds of qualified
24 immunity. (Order at 10.) The R&R recommends that this court grant Defendants' current motion to
25 dismiss on these grounds because the facts alleged by Plaintiff do not establish a violation of an Eighth
26 or Fourteenth Amendment right. (R&R at 21.)

27 Qualified immunity protects government officials from damages when "their conduct does not
28 violate clearly established statutory or constitutional rights of which a reasonable person would have

known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In Saucier v. Katz, the Supreme Court established two inquiries for determining whether officials are entitled to qualified immunity. 533 U.S. 194, 201 (2001). First, courts ask, "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. The court's inquiry ends "[i]f no constitutional right would have been violated were the allegations established." Id. However, if the court answers the initial inquiry in the affirmative, the court must determine "whether the right was clearly established" under the circumstances of the particular case. Id. The Court modified the Saucier analysis in Pearson v. Callahan, holding that the two-part test is "often appropriate" in qualified immunity cases, but not mandatory. 555 U.S. 223, 129 S.Ct. 808, 818 (2009). That decision leaves district courts with discretion to determine whether the Saucier analysis "will best facilitate the fair and efficient disposition of each case." Id. at 821.

In examining the issue of the Defendants' qualified immunity in this case, the Saucier analysis is appropriate. The constitutional violations alleged by Plaintiff are clearly established rights. However, as discussed above, Plaintiff did not properly state either Eighth or Fourteenth Amendment claims. As a result, on the facts alleged, Defendants could not have violated Plaintiff's constitutional rights under these amendments.

The R&R does not discuss Plaintiff's claim of First Amendment retaliation in the qualified immunity context. As previously discussed, Plaintiff has a viable First Amendment retaliation claim. (Order at 5; FAC at 7.) Under the First Amendment, individuals have a clearly established right to be free from "government officials [] subjecting [them] to retaliatory actions, including criminal prosecutions, for speaking out." Hartman v. Moore, 547 U.S. 250, 256 (2006). As found in the Order, viewing the facts in the light most favorable to Plaintiff, Defendants violated Plaintiff's clearly established First Amendment right.

The court **DENIES** Defendants' motion to dismiss on qualified immunity grounds with respect to Plaintiff's First Amendment claim, and **GRANTS** the motion with respect to all other claims.

*G. Respondeat Superior*

The R&R notes that it is unclear whether Plaintiff intended to include Hernandez as a defendant in his amended complaint. (R&R at 17.) The R&R construed the FAC liberally, assuming

1 that Hernandez was still a party because Plaintiff mentioned Hernandez in the body of his FAC. (Id.) The R&R recommends that this court dismiss all charges against him because Plaintiff does not claim Hernandez was personally involved in any civil rights violations, and because respondeat superior does not apply to § 1983 claims. (R&R at 18). Plaintiff does not object.

In the motion to amend his complaint, Plaintiff stated his intention not to include Hernandez as a defendant. (Doc. No. 72, Motion to Amend at 1.) Further, Plaintiff did not explicitly name Hernandez as a party in the FAC, nor does the FAC contain any factual allegations against him. (FAC at 1.) "The title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). The court takes Plaintiff's stated intention not to include Hernandez as a defendant in an amended complaint, his failure to include Hernandez in the title of his amended complaint, and his failure to make any allegations against Hernandez as a stipulation that all charges against Hernandez will be dismissed. Although the Plaintiff mentioned Hernandez in the body of the FAC, the FAC simply stated that Plaintiff had filed a grievance against several prison employees, including Hernandez. (FAC at 2.) It did not state any present intent to include Hernandez as a defendant. (Id.)

Even if Plaintiff intended to include Hernandez as a party, it is clear that any claims against Hernandez would fail. See Lopez v. Smith, 203 F.3d 1122, 1128 (9th Cir. 2000). Respondeat superior does not apply to § 1983 actions. Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1976). As a result, § 1983 liability requires that "personal participation in the alleged rights deprivation." Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff could have added allegations of personal participation in his amended complaint. Instead, he removed Hernandez from the title and did not object to the R&R's recommendation for Hernandez's dismissal.

Defendant Hernandez's motion to dismiss is **GRANTED**. Plaintiff's claims against Defendant Hernandez are dismissed with prejudice.

*H. Injunctive Relief*

Plaintiff requests that the court order the Director of the California Department of Corrections and Rehabilitation ("CDCR") and the Classification Staff Representative Committee ("CSR") to transfer him back to Mule Creek State Prison. (FAC at 19.) The court only has authority to bind to an injunction parties to a suit, officers, agents, servants, employees, or attorneys of a party, and those

1  who "are in active concert or participation" with a party. Fed. R. Civ. P. 65(d)(2)(C).

2  The R&R notes that the Director of CDCR and the members of the CSR are not parties to this suit. (R&R at 24.) It further states that those individuals are not officers, agents, servants, employees, or attorneys of Defendants. (Id.) Therefore, it recommends that this court grant Defendant's motion to dismiss Plaintiff's claim for relief with prejudice. (Id.)

Plaintiff objects, arguing that the court may grant his claim for injunctive relief because Defendants and other CDCR employees acted in concert against Plaintiff. (Obj. at 14.) Plaintiff did not, in either his FAC or objections to the R&R, allege that either the Director of CDCR or the members of the CSR acted with Defendants in any manner. Defendants' motion to dismiss is thus **GRANTED** with leave to amend.

//

## IV. Conclusion

Based on the foregoing, the court hereby adopts the findings and recommendations of the R&R, as amended with regard to Defendant Hernandez. The court **GRANTS** Defendants' motion to dismiss Plaintiff's § 1983 claims for violation of his Eighth and Fourteenth Amendment rights, his claims for injunctive relief, his claims against Defendant Hernandez, and his claims against Defendants in their official capacities. Plaintiff's claims under the Eighth and Fourteenth Amendments and for injunctive relief are **DISMISSED without prejudice**. His claims against Defendant Hernandez and against the remaining defendants in their official capacities are **DISMISSED with prejudice**. Plaintiff's First Amendment retaliation claim remains viable.

Plaintiff is granted leave to file a second amended complaint consistent with this order. See Lopez, 203 F.3d at 1128 (dismissal of a *pro se* complaint without leave to amend for failure to state a claim is proper only where obvious that amendment would be futile). If Plaintiff wishes to file a second amended complaint, he must do so by **April 10, 2011**. If Plaintiff does not file a second amended complaint by that date, the case will proceed on his § 1983 retaliation claim.

**IT IS SO ORDERED.**

DATED: March 14, 2011

_____
Hon. Jeffrey T. Miller
United States District Judge